ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
14742 Beach Blvd., Suite 410
La Mirada, CA 90638
Ph: 213-335-3935
Fax: 213-296-6278
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4343 Von Karman Ave, Suite 250
Newport Beach, CA 92660
Ph.:  949-260-1240
Fax:  949-260-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiff Haya Hilton, Individually
and On Behalf of All Others Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| HAYA HILTON, an individual, on behalf of herself and all others similarly situated, | CASE NO.:  2:20-cv-04658 |
|---|---|
| Plaintiff, vs. | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** |
| PRETTYLITTLETHING.COM USA INC., a Delaware corporation, BOOHOO GROUP PLC, a United Kingdom public limited company, and DOES 1-100, inclusive.  Defendants. | **1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 et seq.)** |
| | **2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500 et seq.)** |
| | **3. VIOLATION OF CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750 et seq.)** |
| | **4. FRAUD (INTENTIONAL MISREPRESENTATIONS)** |
| | **5. FRAUDULENT CONCEALMENT** |
| | **6. UNJUST ENRICHMENT** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Haya Hilton ("Plaintiff"), on behalf of herself and all others similarly situated, hereby alleges as follows:

## I.    BACKGROUND

1.    This action is brought against defendants Prettylittlething.com USA Inc. and Boohoo Group PLC (collectively, "Defendants" or "PrettyLittleThing" or "PLT") for their false and deceptive pricing practices in connection with their sale of "PrettyLittleThing" clothing, accessories and other items on their U.S. website, https://www.prettylittlething.us.  PLT does so by advertising fake and inflated original prices to deceive customers into a false belief that the sale price is a deeply discounted bargain price.  For example, anyone visiting PLT's site on a given day during a "GET 50% OFF EVERYTHING SALE" who buys an item of clothing "on sale" for $20 based on an original or reference price of $40 is being misled.  This is deception because that item of clothing has rarely, if ever, been sold in the recent past on the site for $40.  Further, because PLT's website is the only channel through which "PrettyLittleThing" clothing is sold, Defendants cannot justifiably claim that another retailer has sold that dress for $40.  In other words, PLT's "sale" is not really a sale at all.  It is a scam.  All the reference prices on PLT's website are fake.  They are not original, regular, retail, or former prices.  They are inflated prices posted to lure unsuspecting customers into jumping at a fake "bargain."  That is, PLT engages in this deceptive advertising and pricing scheme to give customers the false impression that they are getting a deal or bargain when in reality they are being swindled by fake sales.  As a result, customers are deceived into spending money they otherwise would not have, purchasing items they otherwise would not have, and/or spending more money for an item than they otherwise would have absent the deceptive marketing.  By this action, Plaintiff seeks to put an immediate end to PLT's untruthful marketing practices and recover restitution and damages on behalf of all persons who have fallen victim to PLT's sham sales by purchasing products on PLT's website from May 2016 to the present.

**CLASS ACTION COMPLAINT**

## II. PARTIES

2. Plaintiff Haya Hilton is a citizen of the State of California and resident of the County of Contra Costa.

3. Defendant Prettylittlething.com USA Inc. is a Delaware corporation and is headquartered in the County of Los Angeles within the State of California, where it has its principal place of business.

4. Defendant Boohoo Group PLC is a public limited company organized and existing under the laws of the United Kingdom. Boohoo Group PLC is the parent company of the online clothing brands boohoo, boohooMAN, PrettyLittleThing, Nasty Gal, Karen Millen, Coast, and Miss Pap.

5. The true names and capacities of defendants DOES 1 through 100, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as DOE is in some manner responsible for the acts and occurrences set forth herein. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 100, inclusive, as well as the manner in which each DOE defendant is responsible, when the same have been ascertained.

6. Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

7. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary

wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

8.  Prettylittlething.com USA Inc., Boohoo Group PLC, and DOES 1-100 shall together be referred to hereafter as "Defendants" or "PrettyLittleThing" or "PLT."

### III.   JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because the total matter in controversy exceeds $5 Million and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

10.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (c)(3) because Defendants are subject to the Court's personal jurisdiction in this judicial district, and because one of the defendants resides in this judicial district while the other defendant is not resident in the United States.

### IV.   GENERAL ALLEGATIONS

**A.   Company Background**

11.  Upon information and belief, PLT launched in 2012 and is in the business of marketing and selling "PrettyLittleThing" clothing and accessories on the Internet. Defendants exclusively sell their clothing and accessories online.  Defendants' marketing emphasizes their bargains and their vast online presence, including millions of followers on social media.

12.  Upon information and belief, PLT's online store for United States customers—found at https://www.prettylittlething.us—was launched in 2016 and PLT began selling products to customers in the United States through its online store by at least that year.

13.  PLT offers customers "PrettyLittleThing" apparel and accessories for women,

including, among other items, dresses, tops, jeans, jewelry, workout gear, sleepwear, swimwear, and shoes.   As noted, because Defendants sell their "PrettyLittleThing" products (i.e., "PrettyLittleThing"-branded items or items made primarily for Defendants containing other branding) on their website, there is no other regular price or market price for the products they sell other than the price on the company's own website.

**B.      PrettyLittleThings' False and Deceptive Pricing Scheme**

14.     Unfortunately, Defendants' business model relies on deceiving customers with fake sales.  On a typical day, PLT prominently displays on its landing page, its product pages, and/or both some form of a sale where all products or a select grouping of products are supposedly discounted by a specified percentage—for example, 40, 50, or 60% off.  All or nearly all PLT products on the site are represented as being discounted by the specified percentage discount from a substantially higher original or reference price, which is prominently displayed to the customer as being the supposed original price (hereafter, the "Reference Price"); by doing this, Defendants convey to customers that the product had previously sold in the recent past at the Reference Price, but is being sold to the customer at a substantial discount.

15.     However, this Reference Price in the "sale" is almost always, if not always, a falsely inflated price because PLT rarely, if ever, sells its items at the Reference Price.  The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is an original, regular, retail, and/or former price at which PLT usually sells the item or previously sold the item in the recent past.  As a result, PLT falsely conveys to customers that they are receiving a substantial markdown or discount, when in reality the alleged discount is false and fraudulent.  Moreover, because PLT products are sold only through PLT's website, the Reference Price cannot mean the prevailing market price of the product at any outlet other than PLT's website.  Compounding the deception, the PLT website will often display messages like "Hurry! Limited Time Only" to give customers a sense of urgency to take advantage of the fake sales, when in reality, PLT runs a "sale" on PLT items on its site everyday (or at a minimum, most days).

16.     For example, on May 14, 2020, PLT's landing page prominently displayed the statement "GET 50% OFF EVERYTHING," "Hurry! Limited Time Only."



The same message is displayed in a prominent banner near the top of the page throughout the website.  Two examples are provided below.



**CLASS ACTION COMPLAINT**

1



11

12   17.    PLT also uses crossed out original or Reference Prices to represent fake sales

13   to customers.  The crossed-out price reflects a fake former price.  For example, as shown

14   in the graphic below, on May 14, 2020, PLT represented that PLT's "pink peach skin

15   pocket flared pants" were originally priced at $42.00, when in reality, upon information

16   and belief, those pants were never (or almost never) sold for $42.00 within the recent past,

17   if ever, including within ninety days prior to the date of sale.

18



28   18.    Using  signs,  banners,  crossed-out  prices,  and  other  similar  methods

throughout the shopping and ordering process, PLT continually reinforces the false conception that the customer is receiving a deep discount off of a former retail or regular price when this is not true at all.  Even at checkout, PLT usually displays a crossed-out Reference Price as a fake former price and includes a line item for the total "Discount" that the customer has allegedly received.  This phantom "Discount" appears in the order confirmation and receipt displayed to customers and delivered by e-mail after the order has been completed and payment has been made.  The following graphic reflects an example:



By doing so, PLT not only deceives the customer with the sham sale and fake former pricing, but then further uses that deception to build goodwill to lure customers back for more fake "sales" and "discounts."

19.    These pricing and advertising practices reflecting high-pressure fake sales are

patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from PLT on sale and at a substantial and deep discount. The truth is that PLT rarely, if ever, sells any of its products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

### C. Plaintiff's Purchase of Falsely Advertised Items from PLT

20. Plaintiff Haya Hilton ("Plaintiff") fell victim to PLT's false advertising and deceptive pricing practices. On or about February 22, 2020, Plaintiff visited PLT's U.S. website to shop for clothing. Plaintiff visited the site from her home in the State of California. Plaintiff saw on the website that PLT was running a "50% Off Everything" sale, which lured her to make purchases on the website. She found and selected a number of items and added them to her shopping cart, with each item displayed by PLT as having a Reference Price and a sale price of 50% off, as shown below:

| | | |
|---|---|---|
| **(a)** | **White Wide Leg Woven Pants** | ~~$45.00~~ <br> **$22.50 (50% OFF)** |
| **(b)** | **Tall Black Crepe Belt Detail Pants** | ~~$38.00~~ <br> **$19.00 (50% OFF)** |
| **(c)** | **Shape Mid Blue Wash Zip Front Wide Leg Jeans** | ~~$45.00~~ <br> **$22.50 (50% OFF)** |
| **(d)** | **Black Pinstripe Pocket Detail Crepe Wide Leg Pants** | ~~$38.00~~ <br> **$19.00 (50% OFF)** |
| **(e)** | **Grey Rib Wide Leg Frill Detail Pants** | ~~$28.00~~ <br> **$14.00 (50% OFF)** |
| **(f)** | **Grey Rib Wide Leg Frill Long Sleeve Crop Top** | ~~$28.00~~ <br> **$14.00 (50% OFF)** |
| **(g)** | **Pink Peach Skin Pocket Flared Pants** | ~~$40.00~~ <br> **$20.00 (50% OFF)** |
| | | **Subtotal:      $262.00** |
| | | **USA Standard:  $6.99** |

| | |
|---|---|
| **Coupon code:** | **Gimme50** |
| **Discount:** | **$131.00** |
| **Sales Tax:** | **$10.85** |
| **Total amount:** | **$148.84** |

21.     Plaintiff purchased the products listed above.  Before doing so, Plaintiff relied on the prominently displayed fake sale based on the falsely inflated Reference Prices, reflecting former prices.  That is, Plaintiff relied on the representation that the products listed above had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price corresponding to each item as displayed by PLT on its website. Plaintiff thus relied on PLT's representation that each of the products listed above was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by PLT.

22.     Including shipping and sales tax, Plaintiff paid $148.84 for her order.  Of this amount, her "pre-sale" subtotal for the items was $262.00.  After deceiving Plaintiff into making the purchase, PLT reinforced to Plaintiff that she had received a genuine and substantial bargain in connection with her purchase by representing to her that she had received a $131.00 "Discount" based on the "50% Off Everything" sale.  The items Plaintiff ordered were delivered to her in the State of California.

23.     The truth, however, is that the products Plaintiff purchased were not substantially marked down or discounted, or at the very least, any discount she was receiving had been grossly exaggerated.  That is because none of the products Plaintiff bought had been offered for sale on PLT's website for any reasonably substantial period of time (if ever) at the full Reference Price.  In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), PLT had not offered any of the items sold to Plaintiff at the stated Reference Prices.  Those Reference Prices were fake prices used in Defendants' deceptive marketing scheme.

24.     Defendants know that the Reference Prices on PLT's website are fake and artificially inflated and intentionally use them in their deceptive pricing scheme on the PLT website to increase sales and profits by misleading Plaintiff and members of the putative

class to believe that they are buying products at a substantial discount.  Defendants thereby induce customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendants were simply being truthful about their "sales."

25.     Therefore, Plaintiff would not have purchased the items listed above, or at a minimum, would not have paid as much as she did for those items, had PLT been truthful. Plaintiff was persuaded to make her purchase only because of the fake sale based on PLT's fake Reference Price.

**D.     Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendants' Deceptive Pricing Scheme Influences Consumer Behavior and Affects Consumers' Perceptions of a Product's Value**

26.     The effectiveness of PrettyLittleThing's egregiously deceitful pricing scheme is backed up by longstanding scholarly research.   In the seminal article entitled *Comparative* Price *Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).   Thus, "empirical studies indicate that, *as discount size increases*, *consumers' perceptions of value and their willingness to buy the product increase*, while their intention to search for a lower price decreases." *Id.* at 56 (emphasis added).   For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing strikingly similar to the claim at issue here had standing to pursue his claim against the defendant retailer.   In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be."  *Hinojos*, 718 F.3d at 1106.

27.     Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."   Dhruv Grewal & Larry D.

Compeau, *Comparative Price Advertising: Believe It Or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002). The professors also found that "[c]onsumers are influenced by comparison prices *even when the stated reference prices are implausibly high*." *Id.* (emphasis added).

28. In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors . . . [T]hese bargain assurances (BAs) change consumers' purchasing behavior and may deceive consumers." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

29. Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

30. The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990). This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price." *Id.*

31. The unmistakable inference to be drawn from this research and the Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use of false reference pricing employed here by Defendants is intended to, and does in fact, influence

customer behavior—as it did Plaintiff's purchasing decision here—by artificially inflating customer perceptions of a given item's value and causing customers to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for a product than they otherwise would have absent the deceptive advertising.

## V.   CLASS ACTION ALLEGATIONS

32.   Plaintiff brings this action on behalf of herself and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seeks certification of the following class:

> All persons in the United States of America who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).

33.   The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

34.   In the alternative, Plaintiff seeks certification of the following class pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons in the State of California who purchased one or more "PrettyLittleThing" products from https://www.prettylittlething.us between May 19, 2016, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).

35.   The above-described class of persons shall hereafter be referred to as the "California Class." Excluded from the California Class are any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

36.   Plaintiff reserves the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection

with the motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

37.   **Numerosity.**   The Class is so numerous that joinder of all members in one action is impracticable.   The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are in excess of 50,000 members of the Class.

38.   **Typicality.**   Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendants' course of conduct as described herein.

39.   **Adequacy of Representation.**   Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.   Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and her counsel intend to prosecute this action vigorously.

40.   **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class.   These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

(a)   Whether, during the Class Period, Defendants advertised false Reference Prices on products offered on their website.

(b)   Whether, during the Class Period, Defendants advertised price discounts from false Reference Prices on products offered on their website.

(c)   Whether the products listed on Defendants' website during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

(d)   Does Defendants' deceptive pricing scheme using false Reference

Prices constitute an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*?

(e) Does Defendants' deceptive pricing scheme using false Reference Prices constitute "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*?

(f) Does Defendants' deceptive pricing scheme using false Reference Prices constitute false advertising in violation of the California False Advertising Law under Business & Professions Code section 17500, *et seq.*?

(g) Whether Defendants' false Reference Prices on products offered on their website during the Class Period are false representations.

(h) Whether and when Defendants learned that false Reference Prices on products offered on their website during the Class Period are false representations.

(i) What did Defendants hope to gain from using a false Reference Price scheme?

(j) What did Defendants gain from their false Reference Price scheme?

(k) Whether Defendants' use of false Reference Prices on products offered on their website during the Class Period was material.

(l) Whether Defendants had a duty to disclose to their customers that the Reference prices were fake "original" prices in furtherance of sham sales.

(m) To what extent did Defendants' conduct cause, and continues to cause, harm to the Class?

(n) Whether the members of the Class are entitled to damages and/or restitution.

(o) What type of injunctive relief is appropriate and necessary to enjoin Defendants from continuing to engage in false or misleading advertising.

(p) Whether Defendants' conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

41. **Superiority.** A class action is superior to other available methods for the fair

-14-

and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.  The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

42.  **Ascertainability.**  Upon information and belief, Defendants keep extensive computerized records of their sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendants have one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses and home addresses (such as billing, mailing, and shipping addresses), through which notice of this action is capable of being disseminated in accordance with due process requirements.

43.  The California Class also satisfies each of the class action requirements set forth above.  The allegations set forth above with regards to the Class, thus, apply equally to the California Class.

# VI.   CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

## (By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the California Class)

44.   Plaintiff restates and re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.   California Business and Professions Code section 17200 *et seq.*, also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" as well as "unfair, deceptive, untrue or misleading advertising."

46.   A cause of action may be brought under the "unlawful" prong of the UCL if a practice violates another law.  Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL.

47.   Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendants have engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

48.   The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1).  Under FTC regulations, false former pricing schemes similar to the ones employed by Defendants, are deceptive practices that would violate the FTCA:

(a)   One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former

price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

(b)     A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

(c)     The following is an example of a price comparison based on a fictitious former price.  John Doe is a retailer of Brand X fountain pens, which cost him $5 each.  His usual markup is 50 percent over cost; that is, his regular retail price is $7.50.  In order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen.  He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days.  Then he "cuts" the price to its usual level—$7.50—and advertises:  "Terrific Bargain: X Pens, Were $10, Now Only $7.50!"  This is obviously a false claim. The advertised "bargain" is not genuine.

(d)     Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he never offered the article at all; he might feature a price which was not used in the regular course of business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.

49.     The FTCA also prohibits the pricing scheme employed by Defendants regardless of whether the product advertisements and representations use the words "regular," "original," or "former" price:

(e)     If the former price is set forth in the advertisement, whether

accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

50. Further, as detailed below in the Second Claim for Relief, Defendants' conduct as described herein also violates California false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"

51. California law also expressly prohibits false former pricing schemes like the one employed by Defendants. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

52. Moreover, as detailed below in the Third Claim for Relief, Defendants' conduct also violates the California Consumer Legal Remedies Act ("CLRA"). *See* Cal.

Civ. Code §§ 1750, *et seq.*  More specifically, Defendants violated the CLRA provisions prohibiting businesses from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]"  Cal. Civ. Code § 1770(a)(13).

53.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

54.     Here, Defendants' actions constitute "unfair" business acts or practices because, as alleged above, Defendants engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendants' deceptive marketing practice gave consumers the false impression that their products regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.  Defendants' acts and practices thus offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.     The harm to Plaintiff and members of the Class outweighs the utility of Defendants' practices.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misleading and deceptive conduct described herein.

56.     A business act or practice is "fraudulent" within the meaning of the UCL if members of the public are likely to be deceived.

57.     Here, members of the public are likely to be deceived by Defendants' conduct as alleged above.  Among other things, Defendants affirmatively misrepresented the

Reference Prices of their merchandise, which thereby misled and deceived customers into believing that they were buying merchandise from Defendants at substantially marked-down and discounted prices. Defendants' deceptive marketing practice gave consumers the false impression that their products regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.

58. In addition, Defendants had a duty to disclose the truth about their pricing deception, including, among other things, that the Reference Prices advertised and published on their website were not, in fact, prices at which PLT items had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendants' products rarely (if ever) were offered at the advertised Reference Prices. Defendants, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendants' failure to disclose material information.

59. Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendants' unlawful, unfair, and/or fraudulent business practices, and as a result of Defendants' unfair, deceptive, untrue or misleading advertising.

60. Plaintiff, on behalf of herself and the members of the Class, seeks restitution and disgorgement of all moneys received by Defendants through the conduct described above.

61. Plaintiff, on behalf of herself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendants from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false Reference Prices in connection with their sale of PLT products on their website.

/ / /

## **SECOND CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. &**

**PROF. CODE § 17500, *et seq.***

**(By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the**

**California Class)**

62.　　Plaintiff restates and re-alleges paragraphs 1 through 61 as if fully set forth herein.

63.　　The California False Advertising Law, codified at California Business & Professions Code section 17500, *et seq.* (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]"  Cal. Bus. & Prof. Code § 17500.  The "intent" required by section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

64.　　Similarly, another section of the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement."  Cal Bus. & Prof. Code § 17501.

65.　　Here, Defendants routinely disseminated on their website false Reference Prices for the products offered for sale on their website, including to Plaintiff.  Such statements of Defendants were untrue, or at the very least, were misleading.  Among other things, Defendants rarely, if ever, offered "PrettyLittleThing" products on their website at the original or Reference Prices displayed in connection with their products.  Further, Defendants rarely, if ever, offered "PrettyLittleThing" products on their website at the

Reference Prices within the three months immediately preceding the publication of the Reference Prices.  Defendants thus misled customers, including Plaintiff, into believing that the Reference Prices are/were genuine original or former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts.  Defendants' deceptive marketing practice gave consumers the false impression that their products regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendants' products were worth more than they actually were.

66.    Defendants engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase the sale of PLT clothing, accessories, and other items offered by Defendants on their website.

67.    Defendants knew, or by the exercise of reasonable care should have known, that their dissemination of Reference Prices for the PLT products sold on their website was untrue and/or misleading.  Among other things, Defendants represented the Reference Prices in connection with the PLT products sold on their website even though they knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the alleged original or Reference Prices.  In other words, the Reference Prices were not actually true original or former prices as Defendants were leading their customers to believe.

68.    As a direct and proximate result of Defendants' misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money.  As such, Plaintiff requests that this Court order Defendants to restore this money to Plaintiff and all members of the Class, and to enjoin Defendants from continuing their false and misleading advertising practices in violation of California law in the future.  Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

/ / /

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**

**CAL. CIV. CODE § 1750, et seq.**

**(By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the California Class)**

69.     Plaintiff restates and re-alleges paragraphs 1 through 68 as if fully set forth herein.

70.     The Consumer Legal Remedies Act of 1970, Cal. Civ. Code sections 1750 *et seq.* (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection."  Cal. Civ. Code § 1760.

71.     Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d).  Defendants' sale of their "PrettyLittleThing" products on their website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

72.     Defendants violated and continue to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendants' PLT products:

> (a)     Advertising goods or services with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and
>
> (b)      Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions (Cal. Civ. Code

§ 1770(a)(13)).

73.    With regards to section 1770(a)(9), Defendants advertised and represented their "PrettyLittleThing" products on their website with the "intent not to sell" them as advertised because, among other things, (a) the false Reference Price advertised in connection with products offered on their website misled and continues to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher Reference Price for some reasonably substantial period of time, and (b) Defendants sell their PLT products only on their website and thus there is no other channel through which the products have previously been offered for sale and/or sold at the false Reference Price.

74.    With regards to section 1770(a)(13), Defendants made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things, (a) no true price reductions existed—or at the very least, any amounts of price reductions were exaggerated—in that Defendants' "PrettyLittleThing" merchandise was rarely, if ever, previously offered for sale and/or sold at the higher Reference Price for a reasonably substantial period of time, (b) Defendants sell their "PrettyLittleThing" products only on their website and thus there is no other channel through which the products have previously been offered for sale and/or sold at the false Reference Price, and (c) the Reference Prices Defendants advertise in connection with their "PrettyLittleThing" products necessarily cannot be former prices or prevailing market prices because Defendants sell their products only on their website and thus, the items were never sold elsewhere for any other price besides the falsely discounted sale price at which customers bought items from Defendants.

75.    Pursuant to California Civil Code section 1782(a), Plaintiff's counsel notified Defendants in writing by certified mail of the particular violations of Civil Code section 1770 and demanded that they rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to act. If Defendants fail to take necessary and appropriate action to rectify their violations of the CLRA within

thirty (30) days of Plaintiff's notice, Plaintiff will amend this Complaint to seek actual, punitive, and statutory damages as appropriate against Defendants under the CLRA.  At this time, Plaintiff seeks an injunction for Defendants' violations of the CLRA to enjoin Defendants' methods, acts, and practices of deceiving customers through their false and misleading pricing scheme as outlined above.

## FOURTH CLAIM FOR RELIEF

### FRAUD (INTENTIONAL MISREPRESENTATIONS)

### (By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the California Class)

76.    Plaintiff restates and re-alleges paragraphs 1 through 75 as if fully set forth herein.

77.    Defendants uniformly represented to all members of the Class during the Class Period in connection with their "PrettyLittleThing" clothing, accessories, and other items on their website that each item had an original or Reference Price.  They make this uniform representation by displaying it on the product description page for each item, as well as on the thumbnail displays of their products when presented as a list, a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a specified percentage discount.

78.    Defendants' Reference Price representations are false.  Among other things, Defendants' representation conveyed false information about the items Plaintiff and the Class purchased, namely that the items they purchased had sold in the recent past for a reasonably substantial period of time at the higher original or Reference Price displayed on Defendants' website and/or in the prevailing market.  The truth is that Defendants rarely, if ever, previously offered for sale and/or sold their "PrettyLittleThing" products at the higher Reference Price for any reasonably substantial period of time.  Moreover, the Reference Prices Defendants represented in connection with their "PrettyLittleThing" products necessarily cannot be prevailing market prices because Defendants sell their products only on their website and thus, the items were never sold elsewhere for any other

price besides the falsely discounted sale price at which customers bought the items from Defendants.

79. Defendants knew that their representations were false when they made them, or at the very least, they made the representations recklessly and without regard for their truth. In other words, Defendants knew that the items Plaintiff and the Class purchased had rarely, if ever, sold at the substantially higher Reference Price displayed on Defendants' website in the recent past and/or in the prevailing market.

80. Defendants' representations were made with the intent that Plaintiff and the Class rely on the false representations and spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for an item than they otherwise would have absent the deceptive marketing scheme. Defendants engaged in this fraud to the Plaintiff and the Class's detriment in order to increase Defendants' own sales and profits.

81. Plaintiff and the Class reasonably relied on Defendants' representations. Absent Defendants' misrepresentations, Plaintiff and the Class would not have purchased the items they purchased from Defendants, or, at the very least, they would not have paid as much for the items as they ultimately did. Plaintiff and the Class's reliance was a substantial factor in causing them harm.

82. As a direct and proximate result of the above, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

83. Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and did cause injury to Plaintiffs and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendants' actions

constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

### FIFTH CLAIM FOR RELIEF

**FRAUDULENT CONCEALMENT**

**(By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the California Class)**

84.    Plaintiff restates and re-alleges paragraphs 1 through 83 as if fully set forth herein.

85.    Defendants uniformly disclosed some facts to Plaintiff and all members of the Class during the Class Period in connection with their "PrettyLittleThing" clothing, accessories, and other items on their website.  Namely, Defendants disclosed a Reference Price, intended to reflect an original or former price, for each item by displaying it on the product description page for each item, as well as on the thumbnail displays of their products when presented as a list, a Reference Price substantially higher than the offered selling price, which is marked down by a specified percentage discount.

86.    Defendants, however, intentionally failed to disclose other facts, making Defendants' disclosure deceptive. Specifically, Defendants failed to disclose that Defendants rarely, if ever, previously offered for sale and/or sold their PLT products at the higher Reference Price for any reasonably substantial period of time.  Moreover, Defendants failed to disclose that the Reference Prices necessarily cannot be prevailing market prices because Defendants sell their PLT products only on their website and thus, the items were never sold elsewhere for any other price besides the falsely discounted sale price at which customers bought items from Defendants.  As a result, Defendants deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality, the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

87.    As a separate basis for concealment, Defendants uniformly and intentionally

concealed from Plaintiff and all members of the Class that the items they purchased from Defendants had rarely, if ever, been sold by Defendants in the recent past at the substantially higher Reference Price displayed on Defendants' website and/or in the prevailing market. These were facts known only to Defendants that Plaintiff and the Class could not have discovered.

88. Plaintiff and the Class did not know of the concealed facts.

89. Defendants intended to deceive Plaintiff and the Class by concealing the facts described above.

90. Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the items she purchased from Defendants, or, at the very least, she would not have paid as much for the items as she ultimately did.

91. The omitted information was material and thus, reliance is presumed on a classwide basis. The omitted information related to the price of the items sold on Defendants' website and whether Plaintiff was receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into by products through a pricing scheme utilizing fake, artificially inflated original prices. A reasonable person would plainly attach importance to matters affecting pricing in determining his or her purchasing decision.

92. As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

93. Defendants undertook the aforesaid illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud, malice, and/or oppression. Based on the allegations above, Defendants' actions constituted fraud because Defendants intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendants' actions constituted malice because Defendants acted with the intent to and did cause injury to Plaintiffs and the Class, and also because Defendants' deceptive conduct was despicable and was done with a willful and knowing disregard of

the rights of Plaintiff and the Class.  Based on the allegations above, Defendants' actions constituted oppression because Defendants' deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

## SIXTH CLAIM FOR RELIEF

### RESTITUTION FOR UNJUST ENRICHMENT

**(By Plaintiff Against Defendants on Behalf of the Class, or in the Alternative, the California Class)**

94.     Plaintiff restates and re-alleges paragraphs 1 through 93 as if fully set forth herein.

95.     Plaintiff brings this restitution claim for relief based on Defendants' unjust enrichment.

96.     Defendants actively engaged in, participated in, agreed to, aided and abetted, conspired in, and/or furthered a scheme by which they were unjustly enriched to the detriment of Plaintiff and the Class.

97.     By their wrongful acts and omissions, Defendants, and each of them, were unjustly enriched at the expense of and to the detriment of Plaintiff and the Class and/or while Plaintiff and the Class were unjustly deprived.  That is, Defendants' unlawful and deceptive pricing scheme induced Plaintiff and the Class to spend money they otherwise would not have, purchase items they otherwise would not have, and/or spend more money for items than they otherwise would have absent the deceptive advertising.

98.     On behalf of the Class, Plaintiff seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all payments, commissions, profits, benefits, and other compensation obtained by Defendants, and each of them, from their wrongful conduct.

/  /  /

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

### ON THE FIRST CLAIM FOR RELIEF FOR VIOLATIONS OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)

1.      For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2.      For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

3.      For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of their unlawful, unfair, and fraudulent business practices, and as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

4.      For an award of equitable and declaratory relief.

5.      For pre and post judgment interest and costs of suit incurred herein.

6.      For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

7.      For such other and further relief as the Court may deem just and proper.

### ON THE SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF THE FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500 *et seq.*)

1.      For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2.      For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading

advertising and pricing practices.

3. For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of their unfair, deceptive, untrue, and misleading advertising, all as described above.

4. For an award of equitable and declaratory relief.

5. For pre and post judgment interest and costs of suit incurred herein.

6. For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

7. For such other and further relief as the Court may deem just and proper.

## ON THE THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750 *et seq.*)

1. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2. For an injunction putting a stop to the deceptive and misleading conduct described herein and ordering Defendants to correct their deceptive and misleading advertising and pricing practices.

3. For leave to amend the operative complaint pursuant to Cal. Civ. Code § 1782(d) and/or any other basis the Court deems just and proper.

4. For pre and post judgment interest and costs of suit incurred herein.

5. For attorneys' fees incurred herein pursuant to California Civil Code section 1780, or to the extent otherwise permitted by law.

6. For such other and further relief as the Court may deem just and proper.

## ON THE FOURTH CLAIM FOR RELIEF FOR FRAUD (AFFIRMATIVE MISREPRESENTATIONS)

1. For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that

Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2.     For compensatory damages in an amount to be proven at trial.

3.     For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

4.     For pre and post judgment interest and costs of suit incurred herein.

5.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

6.     For such other and further relief as the Court may deem just and proper.

## ON THE FIFTH CLAIM FOR RELIEF FOR FRAUDULENT CONCEALMENT

1.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), 23(b)(3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2.     For compensatory damages in an amount to be proven at trial.

3.     For punitive damages in an amount sufficient to punish Defendants and to deter them from engaging in wrongful conduct in the future.

4.     For pre and post judgment interest and costs of suit incurred herein.

5.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

6.     For such other and further relief as the Court may deem just and proper.

## ON THE SIXTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT

1.     For an order certifying that the action be maintained as a class action under Rule 23(b)(2), Rule 23(b)(3), and/or 23(c)(4) of the Federal Rules of Civil Procedure, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

2.     For an award of restitution and disgorgement of moneys paid that Defendants obtained as a result of their deceptive pricing and advertising, all as described above.

3.      For pre and post judgment interest and costs of suit incurred herein.

4.      For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

5.      For such other and further relief as the Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury on all triable issues.

Dated:  May 26, 2020                    ALMADANI LAW


By:      /s/ Yasin M. Almadani
         Yasin M. Almadani


AI LAW, PLC


By:      /s/ Ahmed Ibrahim
         Ahmed Ibrahim
         Attorneys for Plaintiff, Individually and
         On Behalf of All Others Similarly Situated